1

2

3

4

5

6

7

**FILED**
CLERK, U.S. DISTRICT COURT

06/04/2025

CENTRAL DISTRICT OF CALIFORNIA
BY: _____E.C._____ DEPUTY

**UNDER SEAL**

8                  UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                        SOUTHERN DIVISION

11                    March 2025 Grand Jury

12  UNITED STATES OF AMERICA,          8:25-CR-00100-JVS

13            Plaintiff,        I N D I C T M E N T

14       v.                    [18 U.S.C. § 1349: Conspiracy to
                               Commit Wire Fraud and Honest
15  PETER ANH PHAM and          Services Wire Fraud; 18 U.S.C.
    THANH HUONG NGUYEN,         § 1343: Wire Fraud; 18 U.S.C.
16                             1956(a)(1)(b)(i): Concealment
            Defendants.         Money Laundering; 18 U.S.C.
17                             § 666(a)(2): Bribery; 18 U.S.C.
                               §§ 981(a)(1)(C), 982(a)(1) and 28
18                             U.S.C. § 2461(c): Criminal
                               Forfeiture]
19

20       The Grand Jury charges:

21                    INTRODUCTORY ALLEGATIONS

22       At times relevant to this Indictment:

23  A.   BACKGROUND ON FEDERAL COVID-19 FUNDING TO ORANGE COUNTY

24       1.   In the midst of the COVID-19 pandemic, the United States

25  Congress took steps to address risks to the national economy and the

26  wellbeing of state and local governments across the country.  In

27  March 2020, Congress passed the Coronavirus Aid, Relief, and Economic

28  Security ("CARES") Act.  The CARES Act allocated $2.2 trillion

1    dollars for economic stimulus across the country.  Of those funds,

2    Orange County received $544 million to support public health, social

3    services, community needs, and other COVID-19 related expenses within

4    the County.

5         2.   In March 2021, Congress passed the American Rescue Plan Act

6    ("ARPA") which provided an additional $1.9 trillion in economic

7    stimulus.  ARPA included a program called the Coronavirus State and

8    Local Fiscal Recovery Fund ("SLFRF"), which allocated $350 billion to

9    state and local government COVID-19 response programs.  Orange County

10   received a total of $616.8 million in SLFRF funds in two equal

11   tranches; the first in May 2021 and the second in June 2022.

12   B.   BACKGROUND ON ORANGE COUNTY GOVERNMENT, PERSONNEL, AND RELEVANT

13        PROGRAMS

14        3.   The County of Orange (the "County") was governed by a five-

15   member Board of Supervisors, each representing one of five districts

16   of approximately 600,000 people.  As the elected government for the

17   County, the Board of Supervisors was responsible for voting to

18   allocate the more than $1 billion federal CARES Act and ARPA funding

19   during the pandemic.

20        4.   Andrew Hoang Do was a Supervisor on the Board of

21   Supervisors who served as the representative of the County's First

22   District from approximately 2015 to October 2024.  During that time,

23   Do voted on numerous agenda items brought before the Board of

24   Supervisors, directing how County funds, including those funded by

25   the CARES Act and ARPA, would be spent.  Based on his employment and

26   duties, Do owed a duty of honest services to the County.

27        5.   During the pandemic, the Board of Supervisors would

28   occasionally vote to allocate funds to each individual district.

1    Those funds would be earmarked for certain purposes.  When so

2    allocated, the individual District's Supervisor was granted

3    unilateral authority to spend the funds for their intended purpose,

4    including by entering into contracts on behalf of the County.

5    Supervisor Do participated in several of these votes, allocating

6    funds to his District to be disbursed subject to his sole discretion.

7        6.    The County operated a Nutrition Gap Program ("NGP"), which

8    provided government-funded meals to elderly citizens and persons with

9    disabilities living in the County.  During the COVID-19 pandemic, the

10   program was expanded in scope to include people experiencing

11   pandemic-related meal insecurity.  It was also expanded in size due

12   to the increases in federal funding.

13       7.    In disbursing funds, the County relied on at least two

14   mechanisms: contracts and grants.  Contracts were used to enter into

15   a business relationship with a vendor, wherein the vendor would

16   provide a service, and the County would reimburse the vendor for the

17   actual expenditures.  Grants were sums of money given to a nonprofit

18   entity to be used for a particular purpose and required that the

19   receiving entity sign a "beneficiary agreement," which included a

20   certification by the receiving entity that County funds would be used

21   only for the agreed-upon purpose.

22       8.    On June 2, 2020, Do and the Board of Supervisors voted to

23   approve Agenda Item S66D, which, in part, allocated $5 million in

24   CARES Act funding to the County's NGP.  As part of Agenda Item S66D,

25   Do authorized himself a budget of $1 million to develop the NGP

26   program within his district, which he could distribute without

27   further approval from the rest of the Board of Supervisors.

28

3

9.   On April 27, 2021, Do and the Board of Supervisors voted to approve Agenda Item 54, which, in part, allocated $10 million in ARPA funds for meal gap programming, like the NGP.  As part of Agenda Item 54, each Supervisor, including Do, was authorized a budget of $2 million.

10.   On September 9, 2022, Do submitted Supplemental Item S32F to the Board of Supervisors, which proposed allocating an additional $6.9 million in ARPA funds specifically to Do's District for Do to distribute at his own discretion.  The funds were to be spent on "programs that support non-profit organizations that support veterans and aid residents experiencing or at risk of homelessness," and to "provide monies to local governments, including school districts, and/or nonprofits to support mental and physical healthcare initiatives, infrastructure projects, workforce and economic development, education, public safety, meal gap and arts-related programs."  On September 13, 2022, the Board of Supervisors approved the measure.

C.   BACKGROUND ON DEFENDANTS

11.   Defendant PETER ANH PHAM was a friend and associate of Do. On June 10, 2020, eight days after Do voted to approve Agenda Item S66D, defendant PHAM created a nonprofit public benefit corporation called the Viet America Society ("VAS") by registering with the California Secretary of State.  In addition to VAS, defendant PHAM controlled an organization known as HD Construction Inc. ("HD Construction") and another known as Behavioral Health Solutions LLC ("BHS").  Defendant PHAM controlled JPMorgan Chase Bank ("Chase") accounts held under the name Viet America Society with account numbers ending in -9520 ("VAS Account 1"); -5770 ("VAS Account 2");

4

and -5796 ("VAS Account 3").  Defendant PHAM further controlled a

Bank of America bank account held under the name "Viet America

Society" with an account number ending in -0009 ("VAS Account 4");

and two Chase bank accounts held under the name HD Construction, with

account numbers ending in -8058 ("HD Construction Account 1") and -

9639 ("HD Construction Account 2").

12.   Defendant THANH HUONG NGUYEN was an associate of defendant

PHAM.  Defendant NGUYEN controlled an organization named Hand-to-Hand

Relief Organization Inc. ("H2H").  Defendant NGUYEN further

controlled Chase bank accounts held under the name "Hand to Hand,"

with account numbers ending in -9872 ("H2H Account 1"); -3517 ("H2H

Account 2"); and -7965 ("H2H Account 3").  Defendant NGUYEN's

brother, Individual #1, assisted in H2H's operations.

13.   Individual #2 was also an associate of defendant PHAM.

Individual #2 controlled an organization known as Aloha Financial

Investment Incorporated, which also conducted business under the name

Perfume River ("AFI").  Individual #2 further controlled two Chase

bank accounts held under the name "Aloha Financial", doing business

as Perfume River, with account numbers ending in -5136 ("AFI Account

1") and -9710 ("AFI Account 2").

14.   Individual #3 was Do's chief of staff at the County.

Individual #3 would assist defendants in processing paperwork for

contracts, grants, and required monthly reports and invoices.

Individual #4 was the fiancée and later wife of Individual #3 to whom

the defendants would pay tens of thousands of dollars for "consulting

services."

15.   Individual #5 and Individual #6 were family members of Supervisor Do.  Defendants would redirect a portion of the funds received from the County to both Individual #5 and Individual #6.

16.   D Air Conditioning Company LLC ("D Air") was an HVAC company that had a Chase bank account, with account number ending in -8782 ("D Air Account").  Defendant PHAM would cause checks to be written to D Air, and D Air would subsequently issue checks from D Air Account to defendant PHAM, Individual #2, and Individual #6.

COUNT ONE

[18 U.S.C. § 1349]

[ALL DEFENDANTS]

17.  The Grand Jury realleges paragraphs 1 to 16 of this Indictment here.

A.   OBJECT OF THE CONSPIRACY

18.  Beginning no later than on or about June 2, 2020, and continuing to in or around October 2024, in Orange County, within the Central District of California, and elsewhere, defendants PHAM and NGUYEN conspired with one another, Do, and others known and unknown to the Grand Jury, to commit wire fraud in violation of Title 18, United States Code, Section 1343.

B.   MANNER AND MEANS OF THE CONSPIRACY

19.  Do would use his official position as a County Supervisor to vote for millions of dollars in County funds to be allocated to his District, subject to disbursement at his sole discretion.  He would then steer County contracts and grants to defendants PHAM and NGUYEN.

20.  Defendant PHAM, through VAS, and defendant NGUYEN, through H2H, would enter into contracts and beneficiary agreements with the County.  In many of these contracts, VAS and H2H would falsely represent that they would reimburse the County for any funds that were not spent for the contract's intended purpose.  In each of the beneficiary agreements, VAS and H2H would falsely certify that all funds would be used solely for the grant's intended purpose.

21.  In exchange for bribes from defendant PHAM in the form of payments to his daughters, Individual #5 and Individual #6, Do would again use his official position to advocate for VAS and H2H so County

7

1  employees would approve contracts and beneficiary agreements between
2  the County and VAS and H2H.  Do and his staff, including Individual
3  #3, would edit the terms of those contracts and beneficiary
4  agreements to make them more favorable to defendants PHAM and NGUYEN.

5      22.  As a result of the influence of Do and his staff, the
6  County would disburse funds to defendants PHAM and NGUYEN, including
7  through interstate wire communications.

8      23.  After receiving County funds, instead of spending those
9  funds as directed by the applicable contracts or beneficiary
10  agreements, defendants PHAM and NGUYEN would transfer most of the
11  County funds to other entities, including entities controlled by
12  defendants PHAM and NGUYEN and Individual #2, including through
13  interstate wire communications.

14      24.  Defendants PHAM and NGUYEN would then spend large portions
15  of the funds to pay personal expenses (such as rent and bills) and
16  debts owed by defendants' other businesses, and to make personal
17  investments, including by purchasing commercial and residential
18  properties.  Defendants PHAM and NGUYEN would also use the County
19  funds to pay bribes to Supervisor Do through payments to his family
20  members, Individual #5 and Individual #6.

21      25.  Defendant PHAM would also use County funds to pay
22  Individual #4, the significant other of Supervisor Do's chief of
23  staff, Individual #3, under the guise that Individual #4 was
24  providing consulting services to VAS.  Individual #3 would then use
25  his position in County government to assist VAS and H2H in obtaining
26  County contracts, editing terms of contracts to make them more
27  favorable to VAS and H2H, and helping VAS and H2H fulfill reporting
28  requirements and get paid.

26.  When required to submit invoices to the County to account for how funds were being used or distributed, defendants PHAM and NGUYEN would submit false documents, claiming to have used all the funds, and all solely for legitimate purposes in accordance with the applicable contracts.

27.  In order to disguise the source of the funds, defendant PHAM and Individual #2 would cause checks from County funds to be written to D Air.  D Air would then issue checks from D Air Account to defendant PHAM, Individual #2, and Individual #6.

28.  In total, during the conspiracy, defendants PHAM and NGUYEN unlawfully acquired approximately $12 million in County funds.

C.  OVERT ACTS

29.  On or about the following dates, in furtherance of the conspiracy and to accomplish its object, defendants PHAM and NGUYEN, Do, and others known and unknown to the Grand Jury, committed and willfully caused others to commit the following overt acts within the Central District of California, and elsewhere:

Overt Act No. 1:    On June 2, 2020, Do voted in favor of Agenda Item S66 D, which, in part, authorized allocation of $1 million in CARES Act funds to the First District, which could be distributed at Do's discretion.

Overt Act No. 2:    On June 10, 2020, defendant PHAM created a nonprofit public benefit corporation called VAS by registering with the California Secretary of State.

1.  **July 17, 2020 $1 Million Contract Between H2H and the County**

Overt Act No. 3:    On June 11, 2020, Do sent an email from his personal email address to a County employee with an attached document

he described as "my revised contract," to be used to create a contract between the County and H2H.

Overt Act No. 4:    On July 9, 2020, defendant PHAM, on behalf of VAS, and defendant NGUYEN, on behalf of H2H, signed a contract with one another agreeing H2H would provide 1,500 meals per week to VAS in exchange for $6,000.  In exchange, VAS would maintain a kitchen facility, provide logistical support, and handle meal delivery.  VAS would then keep all disbursed County funds, which would total approximately $35,666.65 per week after the $6,000 payment to H2H.

Overt Act No. 5:    On July 17, 2020, defendant NGUYEN signed County contract No. 20-27-0101-CV, in which defendant NGUYEN represented to the County that H2H would deliver 2,500 meals per week from July 2020 through December 2020, in exchange for up to $1 million in County funds.  The contract required H2H to send monthly invoices to the County "showing the prior month's actual expenditures."  The County would then reimburse H2H based, in part, on those invoices.

(a)    **July 2020 Invoice**

Overt Act No. 6:    On July 22, 2020, defendant NGUYEN submitted a false signed invoice to the County, requesting reimbursement for $166,666.66 in H2H's actual expenses for "Services for the County of Orange Nutritional Gap program," causing the County to deposit $166,666.66 into H2H Account 1 on August 3, 2020.

Overt Act No. 7:    On August 5, 2020, defendant NGUYEN caused a $100,000 check to be written from H2H Account 1 to VAS, which was deposited into VAS Account 1.

Overt Act No. 8:    On August 7, 2020, defendant NGUYEN caused a $19,166.66 check to be written from H2H Account 1 to AFI, which was deposited into AFI Account 2.

Overt Act No. 9:    On August 17, 2020, defendant PHAM caused a $10,000 check to be written from VAS Account 1 to Individual #4, the then-fiancée of Do's chief of staff.

(b) **August 2020 Invoice**

Overt Act No. 10:    On August 7, 2020, defendant NGUYEN submitted a false signed invoice to the County, requesting reimbursement for $166,666.66 in H2H's actual expenses for "Services for the County of Orange Nutritional Gap program. (August)," causing the County to deposit $166,666.66 into H2H Account 1 on August 28, 2020.

Overt Act No. 11:    On September 3, 2020, defendant NGUYEN caused a $126,666.66 check to be written from H2H Account 1 to VAS, which was deposited into VAS Account 1.

Overt Act Nos. 12 through 14:    On the dates set forth below, defendants PHAM and NGUYEN engaged in the following transactions with money received from the County:

| Overt Act | Date | Transaction Description |
|---|---|---|
| 12 | 9/4/2020 | Defendant NGUYEN paid $3,000 from H2H Account 1 to Chi Hien Landlord, for rent for a residential property. |
| 13 | 9/8/2020 | Defendant PHAM caused a $27,300 check to be written from VAS Account 1 to D Air. |
| 14 | 9/17/2020 | Defendant PHAM caused a $10,000 check to be written from VAS Account 1 to Individual #4, the then-fiancée of Do's chief of staff. |

1

         **(c)**   **September 2020 Invoice**

2    <u>Overt Act No. 15:</u>  On September 10, 2020, defendant NGUYEN

3  submitted a false signed invoice to the County, requesting

4  reimbursement for $166,666.66 in H2H's actual expenditures for

5  "Services for the County of Orange Nutritional Gap program.

6  (September)," causing the County to deposit $166,666.66 into H2H

7  Account 1 on September 17, 2020.

8    <u>Overt Act No. 16:</u>  On September 23, 2020, defendant NGUYEN

9  caused a $100,000 check to be written from H2H Account 1 to VAS,

10  which was deposited into VAS Account 1.

11    <u>Overt Act Nos. 17 through 19:</u>  On the dates set forth below,

12  defendants PHAM and NGUYEN engaged in the following transactions with

13  money received from the County:

| Overt Act | Date | Transaction Description |
|---|---|---|
| 17 | 9/22/2020 | Defendant NGUYEN paid $30,000 from H2H Account 1 to Angel Nail Spa Brea LLC, a prior creditor of H2H. |
| 18 | 9/24/2020 | Defendant NGUYEN caused a $36,666.66 check to be written from H2H Account 1 to Individual #2. |
| 19 | 10/9/2020 | Defendant PHAM caused a $24,800 check to be written from VAS Account 1 to D Air. |

         **(d)**   **October 2020 Invoice**

    <u>Overt Act No. 20:</u>  On October 7, 2020, defendant NGUYEN

submitted a false signed invoice to the County, requesting

reimbursement for $166,666.66 in H2H's actual expenditures for

"Services for the County of Orange Nutritional Gap program.

(October)," causing the County to deposit $166,666.66 into H2H

Account 1 on October 16, 2020.

Overt Act No. 21:   On October 21, 2020, defendant NGUYEN caused a $100,000 check to be written from H2H Account 1 to VAS, which defendant PHAM deposited into VAS Account 1.

Overt Act No. 22:   On October 21, 2020, defendant NGUYEN caused a $15,000 check to be written from H2H Account 1 to AFI, which was deposited into AFI Account 2.

Overt Act Nos. 23 through 26:   On the dates set forth below, defendants PHAM and NGUYEN engaged in the following transactions with money received from the County:

| Overt Act | Date | Transaction Description |
|---|---|---|
| 23 | 10/28/2020 | Defendant NGUYEN caused a $26,666.66 check to be written from H2H Account 1 to defendant PHAM, which defendant PHAM deposited into his personal bank account. |
| 24 | 10/30/2020 | Defendant PHAM caused a $10,000 check to be written from VAS Account 1 to Individual #4, the then-fiancée of Do's chief of staff. |
| 25 | 11/3/2020 | Defendant NGUYEN caused a $6,867.12 check to be written from H2H Account 1 to Ha Noi Plaza, for the rent for H2H's restaurant. |
| 26 | 11/13/2020 | Defendant NGUYEN paid $255 from H2H Account 1 to Chi Hien Landlord, for rent for a residential property. |

(e)   **November 2020 Invoice**

Overt Act No. 27:   On November 6, 2020, defendant NGUYEN submitted a false signed invoice to the County, requesting reimbursement for $166,666.66 in H2H's actual expenditures for "Services for the County of Orange Nutritional Gap program. (November)," causing the County to deposit $166,666.66 into H2H Account 1 on November 18, 2020.

<u>Overt Act No. 28:</u>    On November 23, 2020, defendant NGUYEN caused a $100,000 check to be written from H2H Account 1 to VAS, which was deposited into VAS Account 1.

<u>Overt Act No. 29:</u>    On November 25, 2020, defendant NGUYEN caused a $11,666.66 check to be written from H2H Account 1 to AFI, which was deposited into AFI Account 2.

<u>Overt Act No. 30:</u>    On December 14, 2020, defendant NGUYEN caused a $32,166.66 check to be written from H2H Account 1 to AFI, which was deposited into AFI Account 2.

<u>Overt Act Nos. 31 through 34</u>:    On the dates set forth below, defendants PHAM and NGUYEN engaged in the following transactions with money received from the County:

| Overt Act | Date | Transaction Description |
|---|---|---|
| 31 | 11/19/2020 | Defendant NGUYEN caused a $25,000 check to be written from H2H Account 1 to KB Group Investments, a prior creditor of H2H. |
| 32 | 11/27/2020 | Defendant PHAM caused a $48,500 check to be written from VAS Account 1 to HD Construction. |
| 33 | 11/30/2020 | Defendant NGUYEN caused a $25,000 check to be written from H2H Account 1 to KB Group Investments, a prior creditor of H2H. |
| 34 | 12/2/2020 | Defendant PHAM caused a $10,000 check to be written from VAS Account 1 to Individual #4, the then-fiancée of Do's chief of staff. |

**(f)    December 2020 Invoice**

<u>Overt Act No. 35:</u>    On December 3, 2020, defendant NGUYEN submitted a false signed invoice to the County, requesting reimbursement for $166,666.66 in H2H's actual expenditures for "Services for the County of Orange Nutritional Gap program. (December)," causing the County to deposit $166,666.66 into H2H Account 1 on December 14, 2020.

14

Overt Act No. 36:   On December 14, 2020, defendant NGUYEN caused a $100,000 check to be written from H2H Account 1 to VAS, which defendant PHAM deposited into VAS Account 1.

Overt Act Nos. 37 through 41:   On the dates set forth below, defendants PHAM and NGUYEN engaged in the following transactions with money received from the County:

| Overt Act | Date | Transaction Description |
|---|---|---|
| 37 | 12/20/2020 | Defendant NGUYEN caused a $25,000 check to be written from H2H Account 1 to KB Group Investments, a prior creditor of H2H. |
| 38 | 1/4/2021 | Defendant NGUYEN paid $3,000 from H2H Account 1 to Chi Hien Landlord, for rent for a residential property. |
| 39 | 1/4/2021 | Defendant NGUYEN paid $6,867.12 from H2H Account 1 to Ha Noi Plaza for rent for H2H's restaurant. |
| 40 | 1/5/2021 | Defendant PHAM caused a $10,000 check to be written from VAS Account 1 to Individual #4, the then-fiancée of Do's chief of staff. |
| 41 | 1/19/2021 | Defendant NGUYEN caused a $1,000 check to be written from H2H Account 1 to her brother, Individual #1. |

## 2.   December 31, 2020 $200,000 Contract Between VAS and the County

Overt Act No. 42:   On January 6, 2021, defendant PHAM signed County contract No. MA-012-21010980, on behalf of VAS, in which defendant PHAM represented to the County that VAS was qualified to provide NGP services and would provide those services from December 31, 2020 through February 2, 2021, in exchange for reimbursement of up to $200,000.  The contract required VAS to send monthly invoices to the County "showing the prior month's actual expenditures."  The County would then reimburse based, in part, on those invoices.

          **(a)    January 2021 Invoice and Request for Advanced Payment**

<u>Overt Act No. 43</u>:    On January 11, 2021, defendant PHAM submitted a false signed invoice to the County, requesting reimbursement for $100,000 in VAS's actual expenditures for "Services for the County of Orange Nutritional Gap program. (January 2021)."

<u>Overt Act No. 44</u>:    On January 20, 2021, defendant PHAM submitted a signed request to the County for an advanced payment "due to a shortage of cash flow," and falsely claimed an "immediate need" to pay for meals in advance; thereby causing the County to deposit $100,000 into VAS Account 1 on February 1, 2021.

<u>Overt Act No. 45</u>:    On February 17, 2021, defendant PHAM caused a $4,000 check to be written from VAS Account 1 to Losa Cleaning Services, for removing debris from a burned building site in Westminster, California.

          **(b)    February 2021 Invoice and Request for Advanced Payment**

<u>Overt Act No. 46</u>:    On February 3, 2021, defendant PHAM submitted a false signed invoice to the County, requesting reimbursement for $100,000 in H2H's actual expenditures for "Services for the County of Orange Nutritional Gap program. (February 2021)."

<u>Overt Act No. 47</u>:    On February 3, 2021, defendant PHAM submitted a signed request to the County for an advanced payment "due to a shortage of cash flow," and falsely claimed an "immediate need" to pay for meals in advance; thereby causing the County to deposit $100,000 into VAS Account 1 on February 24, 2021.

<u>Overt Act Nos. 48 through 52</u>:    On the dates set forth below, defendant PHAM engaged in the following transactions with money received from the County:

| Overt Act | Date | Transaction Description |
|---|---|---|
| 48 | 3/31/2021 | Defendant PHAM caused a $10,000 check to be written from VAS Account 1 to his personal account. |
| 49 | 4/7/2021 | Defendant PHAM used a debit card associated with VAS Account 1 to pay $306.02 at a sushi restaurant. |
| 50 | 4/8/2021 | Defendant PHAM used a debit card associated with VAS Account 1 to pay $442.35 at a seafood restaurant. |
| 51 | 4/27/2021 | Defendant PHAM caused a $10,000 check to be written from VAS Account 1 to his personal account. |
| 52 | 4/29/2021 | Defendant PHAM caused a $100,000 check to be written from VAS Account 1, in California, to Perfume River Restaurant & Lounge.  The check was processed through Chase servers located outside of California. |

Overt Act No. 53:    Between December 31, 2020 and April 1, 2021, VAS spent only approximately $88,907.66 of the $200,000 provided by the County, and kept the remaining funds.

**3.    May 3, 2021 Contract Between VAS and the County**

Overt Act No. 54:    On April 27, 2021, Supervisor Do voted in favor of Agenda Item 54, which, in part, authorized allocation of ARPA funds to Board of Supervisors districts, including the First District, that could be distributed at the discretion of each Supervisor, including $2 million by Supervisor Do.

**(a)    Executing the Contract and Amendments**

Overt Act No. 55:    On May 3, 2021, defendant PHAM signed County contract No. MA-012-21011525, on behalf of VAS, in which defendant PHAM represented to the County that VAS was qualified to provide NGP services and would provide those services from May 3, 2021 through November 30, 2021 in exchange for up to $999,996.00 to be paid in six

17

flat payments of $166,666.00.  The contract required VAS to provide a minimum of 2,500 meals per week and to send monthly invoices to the County "showing the prior month's actual expenditures."  The County would then pay VAS its fee based, in part, on those invoices.

Overt Act No. 56:  On May 7, 2021, defendant PHAM caused the County to issue him a regular monthly payment in the form of a $166,666 check.

Overt Act No. 57:  On May 13, 2021, defendant PHAM caused the check for $166,666 from the County to be deposited into VAS Account 1.

Overt Act No. 58:  On June 16, 2021, defendant PHAM signed an amendment to contract No. MA-012-21011525 extending the term of the contract from November 30, 2021, to May 31, 2022, in exchange for an additional $1 million in County funds.

Overt Act No. 59:  On May 2, 2022, defendant PHAM signed an amendment to contract No. MA-012-21011525 extending the term of the contract from May 31, 2022, to May 31, 2023, in exchange for an additional $2 million in County funds.  Through this amendment, defendant PHAM secured a total of $3,999,996 in County funds in exchange for performing the services required in contract No. MA-012-21011525.

        **(b)**   **Expenditure of County Funds**

Overt Act Nos. 60 through 136:  On the dates set forth below, defendant PHAM engaged in or caused the following transactions with money received in whole or in part from County contract No. MA-012-21011525:

| Overt Act | Date | Transaction Description |
|---|---|---|
| 60 | 5/21/2021 | Defendant PHAM caused a $10,000 check to be written from VAS Account 1 to Losa Cleaning Services, for removing debris from a burned building site in Westminster, California. |
| 61 | 5/31/2021 | Defendant PHAM caused a $10,000 check to be written from VAS Account 1 to himself, which was deposited in his personal account. |
| 62 | 6/1/21 | Defendant PHAM caused a $4,000 check to be written from VAS Account 1 to Losa Cleaning Services, for removing debris from a burned building site in Westminster, California. |
| 63 | 7/1/2021 | Defendant PHAM caused a $10,000 check to be written from VAS Account 1 to himself, which was deposited in his personal account. |
| 64 | 7/28/2021 | Individual #2 transferred $150,000 from AFI Account 2 to California Eagle Escrow Inc for defendant PHAM's purchase of a residential property in Garden Grove, California. |
| 65 | 7/29/2021 | Individual #2 caused a $1,423 check to be written from AFI Account 2 to ABC Escrow, to pay a portion of the liquor license for Perfume River restaurant. |
| 66 | 8/3/2021 | Defendant PHAM caused a $10,000 check to be written from VAS Account 1 to himself, which was deposited in his personal account. |
| 67 | 8/26/2021 | Individual #2 caused a $8,500 check to be written from AFI Account 2 to ABC Escrow, to pay a portion of the liquor license for Perfume River restaurant. |
| 68 | 9/1/2021 | Individual #2 caused an $8,000 check from AFI Account 1 to be written to Individual #5. |
| 69 | 9/2/2021 | Individual #2 caused a $3,445 check to be written from AFI Account 1 to Asian Garden to pay rent for Perfume River restaurant. |
| 70 | 9/20/2021 | Individual #2 caused a $2,485 check to be written from AFI Account 1 to ABC Escrow, to pay a portion of the liquor license for Perfume River restaurant. |
| 71 | 10/3/2021 | Individual #2 caused a $8,000 check to be written from AFI Account 1 to Individual #5. |
| 72 | 10/18/2021 | Defendant PHAM caused a $10,000 check to be written from VAS Account 1 to himself which was deposited in his personal account. |

| Overt Act | Date | Transaction Description |
|---|---|---|
| 73 | 10/30/2021 | Individual #2 caused a $50,000 check to be written from AFI Account 1 to HD Construction, which was deposited in HD Construction Account 1. |
| 74 | 11/1/2021 | Individual #2 caused a $8,000 check, which was blank as to the payee name, to be written from AFI Account 1, which was deposited by Individual #5. |
| 75 | 11/1/2021 | Individual #2 caused a $6,201 check to be written from AFI Account 1 to Asian Garden, for rent for Perfume River restaurant. |
| 76 | 11/12/2021 | Individual #2 caused a $20,000 check to be written from AFI Account 1 to D Air. |
| 77 | 11/12/2021 | Individual #2 caused a $30,000 check to be written from AFI Account 1 to D Air. |
| 78 | 11/23/2021 | Defendant PHAM caused a $10,000 check to be written from VAS Account 1 to himself, which was deposited in his personal account. |
| 79 | 11/25/2021 | Individual #2 caused a $40,000 check to be written from AFI Account 1 to HD Construction, which was deposited in HD Construction Account 1. |
| 80 | 11/30/2021 | Defendant PHAM caused a $100,000 check to be written from VAS Account 1 to his other company, Behavioral Health Solutions, with the memo line: "Donation." |
| 81 | 12/1/2021 | Individual #2 caused a $8,000 check to be written from AFI Account 1 to Individual #5. |
| 82 | 12/2/2021 | Individual #2 caused a $6,720 check to be written from AFI Account 1 to "Topline Wine & Cigar Gift." |
| 83 | 12/4/2021 | Individual #2 caused a $36,031.19 check to be written from AFI Account 1 to defendant PHAM's accountant. |
| 84 | 12/15/2021 | Individual #2 caused a $59,630 check to be written from AFI Account 1 to an escrow company to pay for the liquor license for Perfume River restaurant. |
| 85 | 12/24/2021 | Individual #2 caused a $27,000 check to be written from AFI Account 1 to D Air. |
| 86 | 1/5/2022 | Individual #2 caused a $8,000 check to be written from AFI Account 1 to Individual #5. |
| 87 | 1/7/2022 | Individual #2 used a debit card associated with AFI Account 1 to spend $17,000 at an |

| Overt Act | Date | Transaction Description |
|---|---|---|
| | | "Outdoor Adventure and Lodging" resort in North Carolina. |
| 88 | 1/13/2022 | Individual #2 caused a $5,150 check to be written from AFI Account 1 to "liquorlicense.com." |
| 89 | 2/5/2022 | Individual #2 caused a $8,000 check to be written from AFI Account 1 to Individual #5. |
| 90 | 2/20/22 | Individual #2 caused a $1,793.88 check to be written from AFI Account 1 to "Topline Wine & Cigar Gift." |
| 91 | 3/1/2022 | Individual #2 caused a $8,000 check to be written from AFI Account 1 to Individual #5. |
| 92 | 3/7/2022 | Defendant PHAM caused a $100,000 check to be written from VAS Account 1 to his other company, Behavioral Health Solutions, with the memo line: "Donation." |
| 93 | 3/10/2022 | Individual #2 caused a $10,000 check to be written from AFI Account 1 to HD Construction. |
| 94 | 3/28/2022 | Individual #2 caused a $8,100 check to be written from AFI Account 1 to "[Andrew] Do for State Treasurer." |
| 95 | 3/31/2022 | Individual #2 caused a $8,000 check to be written from AFI Account 1 to Individual #5. |
| 96 | 4/1/2022 | Defendant PHAM caused a $10,000 check to be written from VAS Account 1 to himself. |
| 97 | 4/5/2022 | Individual #2 caused a $10,000 check to be written from AFI Account 1 to HD Construction. |
| 98 | 4/7/2022 | Defendant PHAM caused a $18,000 check to be written from VAS Account 1 to Individual #5, with the memo line: "advisor." |
| 99 | 5/8/2022 | Individual #2 caused a $8,000 check to be written from AFI Account 1 to Individual #5. |
| 100 | 5/10/2022 | Individual #2 caused a $25,000 check to be written from AFI Account 1 to HD Construction. |
| 101 | 5/15/2022 | Individual #2 caused a $25,000 check to be written from AFI Account 1 to D Air. |
| 102 | 5/16/2022 | Individual #2 caused a $25,000 check to be written from AFI Account 1 to D Air. |
| 103 | 5/12/2022 | Individual #2 caused a $14,424 check to be written from AFI Account 1 to defendant PHAM's accountant. |
| 104 | 6/1/2022 | Defendant PHAM caused a $10,000 check to be written from VAS Account 1 to himself. |

| Overt Act | Date | Transaction Description |
|---|---|---|
| 105 | 6/2/2022 | Defendant PHAM caused a $100,000 check to be written from VAS Account 1 to his other company, Behavioral Health Solutions. |
| 106 | 6/3/2022 | Individual #2 caused a $8,000 check to be written from AFI Account 1 to Individual #5. |
| 107 | 6/15/2022 | Individual #2 caused a $5,150 check to be written from AFI Account 1 to "liquorlicense.com." |
| 108 | 6/16/2022 | Individual #2 caused a $7,000 check to be written from AFI Account 1 to D Air. |
| 109 | 6/30/2022 | Individual #2 caused a $8,000 check to be written from AFI Account 1 to Individual #5. |
| 110 | 7/1/2022 | Defendant PHAM caused a $10,000 check to be written from VAS Account 1 to himself. |
| 111 | 7/5/2022 | Individual #2 caused a $25,000 check to be written from AFI Account 1 to HD Construction. |
| 112 | 7/17/2022 | Defendant PHAM caused a $25,000 check to be written from D Air Account to defendant PHAM. |
| 113 | 7/18/2022 | Defendant PHAM caused a $25,000 check to be written from HD Construction Account 1 to D Air. |
| 114 | 7/20/2022 | Defendant PHAM caused a $25,000 check to be written from HD Construction Account 1 to D Air. |
| 115 | 7/23/2022 | Individual #2 caused a $50,000 check to be written from AFI Account 1 to HD Construction. |
| 116 | 7/25/2022 | Defendant PHAM caused a $25,000 check to be written from D Air Account to himself. |
| 117 | 7/29/2022 | Defendant PHAM caused a $10,000 check to be written from VAS Account 1 to himself. |
| 118 | 8/5/2022 | Individual #2 caused a $8,000 check to be written from AFI Account 1 to Individual #5. |
| 119 | 8/8/2022 | Defendant PHAM caused a $10,000 check to be written from VAS Account 1 to himself. |
| 120 | 8/25/2022 | Individual #2 caused a $20,200 check to be written from AFI Account 1 to an escrow company to pay for the liquor license for Perfume River restaurant. |
| 121 | 9/4/2022 | Individual #2 caused a $8,000 check to be written from AFI Account 1 to Individual #5. |
| 122 | 9/10/2022 | Defendant PHAM caused a $50,000 check to be written from VAS Account 1 to HD Construction, which was deposited in HD Construction Account 1. |

| Overt Act | Date | Transaction Description |
|---|---|---|
| 123 | 10/10/2022 | Defendant PHAM caused a $100,000 check to be written from VAS Account 1 to his other company, Behavioral Health Solutions. |
| 124 | 11/1/2022 | Individual #2 caused a $8,000 check to be written from AFI Account 1 to Individual #5. |
| 125 | 11/10/2022 | Individual #2 caused a $30,000 check to be written from AFI Account 1 to herself. |
| 126 | 11/16/2022 | Individual #2 caused a $5,200 check to be written from AFI Account 1 to an escrow company to pay for the liquor license for Perfume River restaurant. |
| 127 | 11/24/2022 | Individual #2 caused a $25,000 check to be written from AFI Account 1 to D Air, which was deposited into D Air Account. |
| 128 | 11/28/2022 | Defendant PHAM caused a $25,000 check to be written from D Air to Do's daughter, Individual #6. |
| 129 | 11/28/2022 | Individual #2 caused a $30,000 check to be written from AFI Account 1 to herself. |
| 130 | 11/30/2022 | Defendant PHAM caused a $25,000 check to be written from VAS Account 1 to D Air. |
| 131 | 11/30/2022 | Individual #2 caused a $8,000 check to be written from AFI Account 1 to Individual #5. |
| 132 | 12/5/2022 | Individual #2 caused a $30,000 check to be written from AFI Account 1 to herself. |
| 133 | 12/28/2022 | Individual #2 deposited four $12,500 checks ($50,000 total) that she caused to be written from AFI Account 1 into her personal accounts. |
| 134 | 12/31/2022 | Defendant PHAM caused a $20,000 check to be written from VAS Account 1 to himself. |
| 135 | 1/3/2023 | Individual #2 caused a $8,000 check to be written from AFI Account 1 to Individual #5. |
| 136 | 2/7/2023 | Defendant PHAM deposited four $20,000 checks ($80,000 total) from VAS Account 1 into his personal accounts. |

### 4.    **March 7, 2023, $2.2 Million Beneficiary Agreement Between VAS and the County**

Overt Act No. 137:  On December 20, 2022, defendant PHAM signed a beneficiary agreement with the County, in which the County would provide VAS with $200,000 "to support its meal gap programs in the

First District." As part of the agreement, defendant PHAM falsely certified that the money would only be used for that purpose. Defendant PHAM's representations caused the County to deposit $200,000 into VAS Account 1 on December 23, 2022.

Overt Act No. 138: On February 24, 2023, Do's chief of staff, Individual #3, emailed a County employee asking to extend County contract No. MA-012-21011525 with VAS for another year and another $2 million, citing "the rising cost of goods and services, and the recent cuts to the CalFresh program." After the County employee said it was not possible to extend the contract, Individual #3 agreed with her suggestion to instead amend the December 20, 2022 beneficiary agreement by increasing the amount from $200,000 to $2.2 million.

Overt Act No. 139: On March 3, 2023, defendant PHAM signed an amended beneficiary agreement with the County, increasing the amount of the December 20, 2022 beneficiary agreement by $2 million "to support its meal gap programs in the First District," thereby causing the County to wire $2 million to VAS Account 1 on March 10, 2023.

Overt Act No. 140: On March 16, 2023, defendant PHAM caused a $1 million check to be written from VAS Account 1, in California, to Perfume River Restaurant, which was deposited in AFI Account 1.

5. **December 2, 2022 $2 Million Beneficiary Agreement Between H2H and County**

Overt Act No. 141: On November 22, 2022, Do's chief of staff, Individual #3, sent an email to a County employee attaching a "scope of services" document, and asked that it be used as the basis for a $2 million beneficiary agreement between the County and H2H, to be paid with Do's First District discretionary fund.

<u>Overt Act No. 142:</u>  On December 2, 2022, defendant NGUYEN signed a beneficiary agreement with the County, in which defendant NGUYEN falsely represented that H2H would provide 10,000 meals to First District Nutritional Meal Gap participants between December 2022 and November 2023, in exchange for $2 million.  As part of the agreement, defendant NGUYEN falsely certified the money would only be used for that purpose.  Defendant NGUYEN's representations caused the County to deposit $2 million into H2H Account 2 on January 3, 2023.  Prior to the County's deposit, H2H Account 2 had a balance of $3,036.46.

<u>Overt Act No. 143:</u>  On January 10, 2023, defendant NGUYEN caused a $500,000 check to be written from H2H Account 2 to Perfume River, which was deposited into AFI Account 1.

<u>Overt Act No. 144:</u>  On January 10, 2023, defendant NGUYEN caused a $50,000 check to be written from H2H Account 2 to D Air.

<u>Overt Act No. 145:</u>  On January 10, 2023, defendant NGUYEN caused a $125,000 check to be written from H2H Account 2 to HD Construction, which was deposited into HD Construction Account 1.

<u>Overt Act No. 146:</u>  On February 10, 2023, defendant NGUYEN paid $72,000 from H2H Account 2 to STMM Real Estate LLC, for rent for the year 2022 for a residential property in Westminster, California.

<u>Overt Act No. 147:</u>  On February 10, 2023, defendant NGUYEN paid $72,000 from H2H Account 2 to STMM Real Estate LLC, for rent for the year 2023 for a residential property in Westminster, California.

<u>Overt Act No. 148:</u>  On February 28, 2023, defendant NGUYEN paid $25,000 from H2H Account 2 to Phoebecat Investment, a prior creditor of H2H.

<u>Overt Act No. 149:</u>  On April 11, 2023, defendant NGUYEN paid $25,000 from H2H Account 2 to Phoebecat Investment, a prior creditor of H2H.

<u>Overt Act Nos. 150 through 181</u>: On the dates set forth below, defendant NGUYEN and Individual #1 made the following cash withdrawals in incremental amounts of $10,000 or less from H2H Accounts 2 and 3:

| Overt Act | Date | Bank Account | Person Making Withdrawal | Cash Amount Withdrawn |
|---|---|---|---|---|
| 150 | 8/6/20 | H2H Account 1 | Defendant NGUYEN | $2,000 |
| 151 | 8/10/20 | H2H Account 1 | Defendant NGUYEN | $3,000 |
| 152 | 8/10/20 | H2H Account 1 | Defendant NGUYEN | $3,000 |
| 153 | 3/29/21 | H2H Account 3 | Defendant NGUYEN | $9,500 |
| 154 | 1/5/22 | H2H Account 3 | Defendant NGUYEN | $9,000 |
| 155 | 1/5/22 | H2H Account 2 | Individual #1 | $8,500 |
| 156 | 1/9/23 | H2H Account 2 | Individual #1 | $9,500 |
| 157 | 1/9/23 | H2H Account 2 | Individual #1 | $9,500 |
| 158 | 1/10/23 | H2H Account 3 | Defendant NGUYEN | $9,500 |
| 159 | 1/10/23 | H2H Account 2 | Individual #1 | $3,000 |
| 160 | 1/11/23 | H2H Account 3 | Defendant NGUYEN | $7,500 |
| 161 | 1/11/23 | H2H Account 2 | Individual #1 | $9,500 |
| 162 | 1/13/23 | H2H Account 3 | Defendant NGUYEN | $3,000 |
| 163 | 1/13/23 | H2H Account 2 | Individual #1 | $9,500 |
| 164 | 1/17/23 | H2H Account 3 | Defendant NGUYEN | $9,500 |
| 165 | 1/17/23 | H2H Account 2 | Individual #1 | $9,500 |
| 166 | 1/18/23 | H2H Account 3 | Defendant NGUYEN | $9,500 |
| 167 | 1/19/23 | H2H Account 3 | Individual #1 | $3,000 |
| 168 | 1/19/23 | H2H Account 2 | Individual #1 | $9,500 |
| 169 | 1/20/23 | H2H Account 2 | Individual #1 | $9,500 |
| 170 | 1/23/23 | H2H Account 3 | Individual #1 | $3,000 |
| 171 | 1/24/23 | H2H Account 2 | Individual #1 | $9,500 |
| 172 | 1/25/23 | H2H Account 3 | Defendant NGUYEN | $9,500 |
| 173 | 1/26/23 | H2H Account 2 | Individual #1 | $9,500 |
| 174 | 1/31/23 | H2H Account 3 | Individual #1 | $9,500 |
| 175 | 1/31/23 | H2H Account 2 | Defendant NGUYEN | $8,000 |
| 176 | 2/1/23 | H2H Account 3 | Defendant NGUYEN | $9,500 |
| 177 | 2/1/23 | H2H Account 2 | Individual #1 | $9,500 |

26

| Overt Act | Date | Bank Account | Person Making Withdrawal | Cash Amount Withdrawn |
|---|---|---|---|---|
| 178 | 2/2/23 | H2H Account 2 | Individual #1 | $9,500 |
| 179 | 2/6/23 | H2H Account 2 | Individual #1 | $9,500 |
| 180 | 6/21/23 | H2H Account 2 | Defendant NGUYEN | $3,000 |
| 181 | 6/22/23 | H2H Account 3 | Individual #1 | $1,000 |

6.    **August 11, 2023 $3 Million Agreement Between VAS and the County**

(a)    **Money Transferred to Individual #5 as Do Personally Edits the Terms of the Agreement**

Overt Act No. 182:  On July 6, 2023, Individual #2 caused $500,000 to be transferred online from AFI Account 1 to AFI Account 2.

Overt Act No. 183:  On July 12, 2023, Individual #2 caused $500,000 to be transferred online from AFI Account 1 to AFI Account 2.

Overt Act No. 184:  On July 17, 2023, Individual #2 caused $500,000 to be transferred online from AFI Account 1 to AFI Account 2.

Overt Act No. 185:  On July 17, 2023, Individual #3 sent an email to Do attaching a copy of the same "scope of services" document that Individual #3 previously sent County employees to create the December 2, 2022 Beneficiary Agreement between the County and H2H.

Overt Act No. 186:  On July 18, 2023, Do sent Individual #3 an edited version of the "scope of services" document along with the message: "this is the scope of work for [defendant PHAM's] Senior Congregant Meal Program."  The version sent by Do removed a minimum number of meals requirement, and removed a term stating that VAS would not be reimbursed for undelivered meals.

<u>Overt Act No. 187:</u>  On July 18, 2023, Individual #2 caused $350,000 to be transferred from AFI Account 2 to the escrow company finalizing the purchase of a residential property in Tustin, California, for $1,035,000, by Individual #5.

<u>Overt Act No. 188:</u>  On July 19, 2023, Individual #3 sent an email directing a County employee to "draft an agreement for execution" with VAS for $3 million, "for a congregate meal program using [Do's] discretionary funds."  Individual #3 attached a copy of the "scope of services" document edited by Do the day before.

<u>Overt Act No. 189:</u>  On August 11, 2023, defendant PHAM signed an agreement with the County in which defendant PHAM represented that VAS would provide a "Senior Congregant Meal Program" from August 2023 through June 30, 2024 in exchange for an advance payment of $3 million.  As part of the agreement, defendant PHAM falsely certified that the money would only be used for that purpose.  Defendant PHAM's representations caused the County to wire $3 million into VAS Account 1 on August 18, 2023.

    **(b)**  **<u>VAS Does Not Use the $3 Million Dollars for a Senior Congregant Meal Program</u>**

<u>Overt Act No. 190:</u>  On October 19, 2023, defendant PHAM caused a $3 million check to be written from VAS Account 1 to VAS Account 3. Prior to this check being deposited, VAS Account 3 had a zero balance.

<u>Overt Act No. 191:</u>  Between October 19, 2023 and December 29, 2023, defendant PHAM maintained the bulk of the $3 million in VAS Account 3, having a balance of $2,986,401 on December 30, 2023.

<u>Overt Act No. 192:</u>  On February 21, 2024, defendant PHAM caused a $5,000 check to be written from VAS Account 3 to an attorney, to pay a retainer for the legal representation of VAS.

<u>Overt Act No. 193:</u>  On February 22, 2024, defendant PHAM caused a $150,000 check to be written from VAS Account 3 to Perfume River Restaurant.

<u>Overt Act No. 194:</u>  On June 11, 2024, defendant PHAM caused a $150,000 check to be written from VAS Account 3 to Perfume River Restaurant.

<u>Overt Act No. 195:</u>  On July 15, 2024, after the expiration of the Senior Congregant Meal Program agreement, defendant PHAM caused a $298,600 check to be written from VAS Account 3 to Perfume River Restaurant.

<u>Overt Act No. 196:</u>  On August 5, 2024, after the expiration of the Senior Congregant Meal Program agreement, defendant PHAM caused a $315,320 check to be written from VAS Account 3 to Perfume River Restaurant.

<u>Overt Act No. 197:</u>  On August 14, 2024, after the expiration of the Senior Congregant Meal Program agreement, defendant PHAM maintained a balance of $1,702,630.86 in VAS Account 3.

COUNT TWO

[18 U.S.C. § 1349]

[DEFENDANT PHAM]

30.   The Grand Jury realleges paragraphs 1 to 16 and 19 to 28 of this Indictment here.

31.   Beginning on an unknown date, but no later than on or about June 2, 2020, and continuing to in or around October 2024, in Orange County, within the Central District of California, and elsewhere, defendant PHAM conspired with Andrew Hoang Do, and others known and unknown to the Grand Jury, to commit the crime of wire fraud involving deprivation of honest services, in violation of Title 18, United States Code, Sections 1343 and 1346.

COUNTS THREE THROUGH EIGHT

[18 U.S.C. §§ 1343, 2(a)]

32. The Grand Jury realleges paragraphs 1 to 16 and 19 to 28 of this Indictment here.

A. THE SCHEME TO DEFRAUD

33. Beginning on or about a date unknown, but no later than in or around June 2020, and continuing to in or around October 2024, in Orange County, within the Central District of California, and elsewhere, defendants PHAM and NGUYEN, and others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud the County of Orange as to material matters, and to obtain money and property from the County of Orange by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

34. The scheme to defraud operated, in substance, as described in paragraphs 19 to 28 of this Indictment.

B. USE OF THE WIRES

35. On or about the dates set forth below, in Orange County, within the Central District of California, and elsewhere, for the purpose of executing the scheme to defraud described above, defendants PHAM and NGUYEN, as indicated below, transmitted and caused the transmission of the following wire communications in interstate commerce:

| COUNT | DEFENDANT | DATE | WIRE TRANSMISSION |
|-------|-----------|------|-------------------|
| THREE | PHAM | 4/29/2021 | Posting of $100,000 check from VAS Account 1, controlled by defendant PHAM, to Perfume River Restaurant & Lounge |

| COUNT | DEFENDANT | DATE | WIRE TRANSMISSION |
|-------|-----------|------|-------------------|
| FOUR | PHAM & NGUYEN | 1/3/2023 | Posting of $2 million check from the County deposited into H2H Account 2 |
| FIVE | PHAM | 3/10/2023 | $2 million wire transfer from the County to VAS Account 1 |
| SIX | PHAM | 7/6/2023 | $500,000 wire from AFI Account 1 to AFI Account 2 by Individual #2 |
| SEVEN | PHAM | 7/12/2023 | $500,000 wire from AFI Account 1 to AFI Account 2 by Individual #2 |
| EIGHT | PHAM | 8/18/2023 | $3 million wire transfer from the County to VAS Account 1 |

1                   COUNTS NINE THROUGH FOURTEEN

2              [18 U.S.C. §§ 1956(a)(1)(B)(i), 2]

3        36.   The Grand Jury realleges paragraphs 1 to 16 and 19 to 28 of

4   this Indictment here.

5        37.   On or about the following dates, in Orange County,

6   California, within the Central District of California, and elsewhere,

7   defendants PHAM and NGUYEN, and others known and unknown to the Grand

8   Jury, conducted, aided and abetted the conducting of, and willfully

9   caused others to conduct the following financial transactions,

10  knowing that the property involved in such transactions represented

11  the proceeds of some form of unlawful activity, and which

12  transactions, in fact, involved the proceeds of specified unlawful

13  activity, that is, Conspiracy to Commit Wire Fraud, including the

14  Deprivation of Intangible Right of Honest Services, in violation of

15  Title 18 United States Code Sections 1349, 1343, and 1346, and Wire

16  Fraud, including the Deprivation of Intangible Right of Honest

17  Services, in violation of Title 18, United States Code, Sections 1343

18  and 1346, knowing that the transactions were designed, in whole and

19  in part, to conceal and disguise the nature, location, source,

20  ownership, and control of the proceeds of such specified unlawful

21  activity:

| COUNT | DEFENDANT | DATE | TRANSACTION |
|-------|-----------|------|-------------|
| NINE | PHAM | 7/18/22 | Defendant PHAM caused a $25,000 check to be written from HD Construction Account 1 to D Air. |
| TEN | PHAM | 7/20/22 | Defendant PHAM caused a $25,000 check to be written from HD Construction Account 1 to D Air. |
| ELEVEN | PHAM | 7/25/22 | Defendant PHAM caused a $25,000 check to be written from D Air Account to defendant PHAM. |

| COUNT | DEFENDANT | DATE | TRANSACTION |
|---|---|---|---|
| TWELVE | PHAM | 11/24/22 | Defendant PHAM caused a $25,000 check to be written from AFI Account 1 to D Air. |
| THIRTEEN | PHAM | 11/28/22 | Defendant PHAM caused a $25,000 check to be written from D Air Account to Individual #6. |
| FOURTEEN | PHAM & NGUYEN | 1/10/23 | Defendant NGUYEN caused a $125,000 check to be written from H2H Account 2 to HD Construction, with the memo "Construction Restaurant." |

COUNT FIFTEEN

[18 U.S.C. §§ 666(a)(2), 2]

[DEFENDANT PHAM]

38.   The Grand Jury realleges paragraphs 1 to 16 and 19 to 28 of this Indictment here.

39.   The County of Orange was a government that received more than $10,000 per fiscal year in funds from the United States, including for the years 2020 through 2024, in the form of grants, contracts, subsidies, loans, guarantees, insurance, and other forms of federal assistance.

40.   On or about July 18, 2023, in Orange County, within the Central District of California, within the Central District of California, defendant PHAM, corruptly gave, offered, and agreed to give something of value to a person, intending to influence and reward Andrew Hoang Do, an agent of the County of Orange, in connection with a business, transaction, and series of transactions of the County of Orange having a value of $5,000 or more. Specifically, defendant PHAM corruptly gave, offered, and agreed to give to Do's daughter, Individual #5, approximately $350,000, intending to influence and reward Do in connection with, among other things: (1) voting to allocate County funds to Do's district to pay to defendant PHAM; and (2) using his official position to advocate for County employees to approve contracts and beneficiary agreements with defendant PHAM.

1

FORFEITURE ALLEGATION ONE

2

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

3     1.   Pursuant to Rule 32.2 of the Federal Rules of Criminal

4  Procedure, notice is hereby given that the United States of America

5  will seek forfeiture as part of any sentence, pursuant to Title 18,

6  United States Code, Section 981(a)(1)(C) and Title 28, United States

7  Code, Section 2461(c), in the event of any defendant's conviction of

8  the offenses set forth in any of Counts One through Eight and Fifteen

9  of this Indictment.

10     2.   Any defendant so convicted shall forfeit to the United

11  States of America the following:

12          (a)   All right, title, and interest in any and all

13  property, real or personal, constituting, or derived from, any

14  proceeds traceable to the offenses; and

15          (b)   To the extent such property is not available for

16  forfeiture, a sum of money equal to the total value of the property

17  described in subparagraph (a).

18     3.   Pursuant to Title 21, United States Code, Section 853(p),

19  as incorporated by Title 28, United States Code, Section 2461(c), any

20  defendant so convicted shall forfeit substitute property, up to the

21  value of the property described in the preceding paragraph if, as the

22  result of any act or omission of said defendant, the property

23  described in the preceding paragraph or any portion thereof (a)

24  cannot be located upon the exercise of due diligence; (b) has been

25  transferred, sold to, or deposited with a third party; (c) has been

26  placed beyond the jurisdiction of the court; (d) has been

27  substantially diminished in value; or (e) has been commingled with

28  other property that cannot be divided without difficulty.

1                        FORFEITURE ALLEGATION TWO

2                        [18 U.S.C. § 982(a)(1)]

3      1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal

4   Procedure, notice is hereby given that the United States will seek

5   forfeiture as part of any sentence, pursuant to Title 18, United

6   States Code, Section 982(a)(1), in the event of any defendant's

7   conviction of the offenses set forth in any of Counts Nine through

8   Fourteen of this Indictment.

9      2.   Any defendant so convicted shall forfeit to the United

10  States of America the following:

11          (a)   Any property, real or personal, involved in such

12  offense, and any property traceable to such property; and

13          (b)   To the extent such property is not available for

14  forfeiture, a sum of money equal to the total value of the property

15  described in subparagraph (a).

16     3.   Pursuant to Title 21, United States Code, Section 853(p), as

17  incorporated by Title 18, United States Code, Section 982(b)(1), and

18  Title 18, United States Code, Section 982(b)(2), any defendant so

19  convicted shall forfeit substitute property, if, by any act or

20  omission of said defendant, the property described in the preceding

21  paragraph, or any portion thereof: (a) cannot be located upon the

22  exercise of due diligence; (b) has been transferred, sold to, or

23  deposited with a third party; (c) has been placed beyond the

24  jurisdiction of the court; (d) has been substantially diminished in

25  value; or (e) has been commingled with other property that cannot be

26  divided without difficulty.  Substitution of assets shall not be

27  ordered, however, where the convicted defendant acted merely as an

28  intermediary who handled but did not retain the property in the

                                   37

1    course of the money laundering offense unless the defendant, in

2    committing the offense or offenses giving rise to the forfeiture,

3    conducted three or more separate transactions involving a total of

4    $100,000.00 or more in any twelve-month period.

5

6                                          A TRUE BILL

7

8                                          /s/
                                          _____
9                                          Foreperson

10   BILAL A. ESSAYLI
     United States Attorney
11

12   Christina Shay

13   CHRISTINA T. SHAY
     Assistant United States Attorney
14   Chief, Criminal Division

15   MARK P. TAKLA
     Assistant United States Attorney
16   Acting Chief, Orange County
     Office
17
     GREGORY S. SCALLY
18   Assistant United States Attorney
     Deputy Chief, Orange County
19   Office

20   NANDOR F.R. KISS
     ROSALIND WANG
21   Assistant United States Attorneys
     Orange County Office
22

23

24

25

26

27

28